# EDWARD JOHN STRUBE v. HELEN PIPKIN STRUBE.

## STATE OF TENNESSEE ex rel. MRS. HELEN PIPKIN STRUBE v. EDWARD JOHN STRUBE. —379 S.W.(2d) 44.

Western Section. July 31, 1963.

Certiorari Denied March 17, 1964.

90

Ashley, Malone & Ashley, Dyersburg, for appellant.

Weakley & Weakley, Dyersburg, for appellee.

BEJACH, J. The appeal to this court is by Edward John Strube, from a decree of the Common Law and Chancery Court of Dyer County in these consolidated causes, wherein the court sustained the writ of habeas corpus in favor of relator, Mrs. Helen Pipkin Strube, granting to her custody of three minor children, and dismissed the petition of Edward John Strube seeking to change the award of custody of said children made by the Superior Court of DeKalb County, Georgia. The children involved are Terry Anne Strube, aged 10 years, Edward Christian Strube, aged 8 years, and Theodore Pipkin Strube, age 6 years. Said children are the children of appellant and appellee, who were formerly husband and wife but were divorced by decree of the Superior Court of DeKalb County, Georgia on April 5, 1961. That divorce decree embodied in and made part of same an agreement between the parties which granted to appellee both temporary and permanent custody of the three minor children, reserving, however, to appellant visitation rights and the right to temporary custody of said children during school vacation for such periods as might be agreed on between the parties. A provision was also made therein for payment by appellant to appellee of $30.00 per month, or $110.00 each, for the support of said minor children. After the granting of said divorce decree and award of custody to appellee, she moved to Crystal River in Citrus County, Florida, where she is

engaged as a school teacher. Also, shortly after the said decree, appellant removed to Trenton, New Jersey, and still later, without any notice to appellee, he removed to Dyersburg, Tennessee. During school vacation in the summer of 1962, while appellant was a resident of Trenton, New Jersey, the two younger children were delivered to him at Crystal River, Florida. The daughter, Terry Anne Strube, had previously been sent to him by plane about two weeks before school was out, after arrangements had been made to promote her from the fourth grade to the fifth. Later, in the summer of 1962, appellant removed himself and family, including the three children of appellant and appellee, to Dyersburg, Tennessee, without returning the children to their mother as he was obligated to do. Appellee was not notified of the removal to Dyersburg, and it was several months before she ascertained where appellant and the children were. During July 1962, appellant had informed appellee by telephone that his New Jersey attorney was drafting an agreement for her to sign to give him custody and her visitation rights. He threatened to make it difficult for her to see the children if she did not sign same. She refused. On August 1, 1962, appellant wrote to appellee sending a copy of the proposed agreement changing custody of the children and renewed his threat. She still refused to sign. Thereafter, in late August of 1962, appellant moved with his present wife and the three children to Dyersburg where, without knowledge of or authority from appellee, he enrolled the children in the Jenny Walker Elementary School for the 1962-1963 session. This session they completed about the 1st of June, 1963. When appellee came to Dyersburg on January 3, 1963, and went to the Jennie Walker Elementary School, she was not permitted to

see her children until school authorities had summoned appellant, who came to the school with his attorney and refused to comply with the Georgia decree and his agreement. Appellee was, however, permitted to visit the children at appellant's residence that night, but he again refused to turn the children over to her. On January 4, 1963, appellee filed her petition for the writ of habeas corpus to recover custody of said children. A few minutes before, he had filed a petition in which he sought to enjoin appellee from removing the children from Dyersburg, Tennessee, and sought a change of the provisions of the Georgia Court's decree granting custody of the children so as to change custody to him. These two causes of action were consolidated and heard together. After the hearing, the trial judge took same under advisement. He later dismissed appellant's petition seeking an injunction and change of custody of the children, and sustained the writ of habeas corpus in favor of appellee; but, for the benefit of the children involved and so as not to interfere with their schooling, he ordered that the writ of habeas corpus granting custody to appellee be effective three days after school was out in June 1963. From this decree, appellant has prayed and perfected his appeal to this court. He also obtained from Judge J. B. Avery, of this Court, a writ of supersedeas which stayed enforcement of the writ of habeas corpus, and left the custody of the children with appellant pending disposition of this appeal. A motion was made by appellee before the whole court to strike the writ of supersedeas, which motion was taken under advisement by the court to be considered and disposed of along with disposition of the entire cause; but, pending such disposition, an interlocutory order was entered granting to appellee, under $1,000 cash

bond guaranteeing return of said children to the jurisdiction of this court, authority to have them and take them with her to Florida until September 1, 1963.

In addition to appellee's motion to discharge the writ of supersedeas appellee has filed a motion to strike appellant's assignments of error and dismiss the appeal. Both of these motions will be disposed of in this opinion before taking up and disposing of the appeal.

■ Appellee's motion to strike appellant's assignments of error and dismiss his appeal is predicated on three grounds, which are: 1. Because no motion for new trial was made in the lower court, 2. Because the attempted appeal was not prayed for, perfected or granted within the time provided by statute, and 3. Because the transcript shows that the appellant comes into this court with unclean hands, in that he is in contempt of the provisions of the April 5, 1961 decree of the Superior Court of DeKalb County, Georgia. This motion must be denied. The first ground of same is without merit because this cause was tried by the judge of the Common Law and Chancery Court without the intervention of a jury, and a motion for new trial as a prerequisite for appeal in such case is unnecessary. Section 27-303 T.C.A. provides as follows:

"All cases tried in a court of record without the intervention of a jury, whether in a court of equity or in a court of law and whether tried according to the forms of chancery or according to the forms of law, jurisdiction to review which is in the Court of Appeals, shall be reviewed upon a simple appeal, as now provided in equity cases; and no motion for new trial shall be necessary, but when the case is tried on oral evi-

dence a bill of exceptions shall be filed and included in the transcript. In all such cases the hearing of any issue of fact or of law in the appellate court shall be de novo upon the record of the trial court, accompanied by a presumption of the correctness of the judgment or decree of the trial court, unless the preponderance of the evidence is otherwise.''

Even before the enactment of Section 27-303 T.C.A., it was held by the Supreme Court that a motion for new trial was not a necessary prerequisite for appeal in a habeas corpus case. State ex rel. Daugherty v. Rose, 167 Tenn. 489, 71 S.W.(2d) 685.

██ ██ The second ground of the motion to strike is based on the circumstance that the trial judge filed his written finding of fact on January 29, 1963, but the decree was not entered until April 2, 1963. The appeal bond was filed April 5, 1963, and the bill of exceptions was filed May 30, 1963. The decree allowed thirty days within which to file the appeal bond, and sixty days within which to file the bill of exceptions. Evidently, appellee's motion assumes that the appeal should have been prayed and prefected within thirty days from the filing of the judge's written finding of facts on January 29, 1963. Such is not the law, however. Until the written findings of the trial judge, filed January 29, 1963, was reduced to the form of a judgment or decree and spread on the minutes of the court, the action of the court was not complete and there was no decree from which to appeal. Mass. Mut. Life Ins. Co. v. Taylor Implement & Vehicle Co., 138 Tenn. 28, 195 S.W. 762; Jackson v. Jarratt, 165 Tenn. 76, 52 S.W.(2d) 137; Broadway Motor Co. v. Public Fire Ins. Co., 12 Tenn.App. 278.

■■ The third ground, namely, that appellant comes into court with unclean hands might in some cases be sufficient justification for denying a hearing to appellant. As was said by Mr. Justice Cook, however, speaking for the Supreme Court in State ex rel. Daugherty v. Rose, 167 Tenn. 489, 71 S.W.(2d) 685, ''When such proceedings involve the custody of children, they are not decided according to the strict legal right of·the petitioner, but are dependent upon the child's welfare.'' And in State ex rel. French v. French, 182 Tenn. 606, 188 S.W.(2d) 603, Mr. Chief Justice Green, speaking for the Supreme Court, where a similar question was presented, said, ''If it be said that the father is in contempt of the Ohio courts, nevertheless we think he might be heard if the welfare of the boy so dictated. The Ohio courts would not likely penalize the boy for the father's contumacy.'' For the same reason, we think the father, in the instant case, is entitled to a hearing on the merits of his appeal. The motion to strike the assignments of error and dismiss the appeal is, accordingly, denied.

■■ Appellee's motion to discharge the writ of supersedeas must also be denied. If it be considered as being ruled on at the time of the hearing, when actually made, it must be treated as if it had been then overruled. As of that time, the remaining members of the court were without authority to discharge, prior to final determination of the case on its merits, the writ of supersedeas granted by one of the court's members. Blake v. Dodge, 76 Tenn. 465; Redmond v. Redmond, 68 Tenn. 561; Hammond v. Rawls, 186 Tenn. 427, 430, 211 S.W.(2d) 170; First Nat'l Bank v. Planters Nat'l Bank, 9 Tenn.App. 87. Treated as ruled on at this time, in disposing of the appeal on its merits, the effect of sustaining the motion

would be to cut off on a technicality the merits of the appeal. We prefer to dispose of the case on its merits, in which situation the motion to discharge the writ of supersedeas has become, in effect, functus officio and for all practical purposes moot. Especially is this so in view of the fact that an interlocutory order has been entered in this court granting custody of the children to appellee until September 1, 1963.

We next take up on its merits the appeal of Edward John Strube. As appellant he has filed in this court seven assignments of error. We will dispose of these seriatum.

By assignment of Error I, he asserts that it was error for the trial court to restrict the evidence in these consolidated causes to two issues, viz., 1. Have the parties made any agreement, either written or verbal, since the entry of the Georgia decree, to change its provisions as to the custody of their children, and, 2. Does the conduct of the mother with reference to the three children show that she is unfit to be entrusted with their custody to the extent that it would shock the conscience of the court to enforce the provisions of the Georgia decree as to custody?

The leading case in Tennessee on the questions here involved is Kenner v. Kenner, 139 Tenn. 211, 201 S.W. 779, L.R.A. 1918E, 587. From the opinion of the Supreme Court in that case, written by Mr. Chief Justice Neil, at page 223 of the Tennessee Report, and at page 782 of the South Western Report, we quote as follows:

"We are of the opinion that as between the parents, parties to the litigation, the decree of the foreign court awarding the custody of the children in res adjudicata, subject, as between those parties, to modification only

by the court that granted the decree. (Citing cases) However, we think this doctrine should be understood with the qualification that, in case of the removal of the child to another state, even within the custody of the parent to whom that custody had been awarded by the foreign decree of divorce, the courts of the state to which the removal has been effected will have the power, on a change of circumstances showing such course essential to the best interests of the child, to make a new disposition of the child.''

The decision of the Supreme Court awarding full faith and credit to the judgment or decree of another State has been approved in numerous cases subsequent thereto. Among these are State ex rel. French v. French, 182 Tenn. 606, 188 S.W.(2d) 603; Alexander v. Alexander, 39 Tenn. App. 521, 286 S.W.(2d) 104; Cecil v. State ex rel. Cecil, 192 Tenn. 74, 237 S.W.(2d) 558. It is argued on behalf of appellant, however, that the rule announced in Kenner v. Kenner should not be applied in the instant case because decisions by the Supreme Court of Georgia have held that where, as is true in the instant case, the parties to a Georgia decree awarding a divorce and custody of children have both removed from Georgia, the Georgia court awarding the divorce and custody no longer retains jurisdiction. Cases so holding are cited as follows: Perry v. Perry (1956), 212 Ga. 668, 95 S.E.(2d) 2; Heffernan v. Heffernan (1961), 216 Ga. 588, 118 S.E.(2d) 483; and Cooper v. Stephens, 214 Ga. 825, 108 S.E.(2d) 274.

██ We think this removal of the parties, Mrs. Strube to Florida and Mr. Strube first to New Jersey and then to Tennessee, is immaterial. Clearly the court indicated

by the language quoted in the Kenner case as being the one authorized to make changes, is the court of original jurisdiction of Citrus County, Florida, where the town of Crystal River is situated. Citrus County, Florida is the county of appellee's residence and domicile, and consequently is that of the children here involved. State ex rel. Sprague v. Bucher, 38 Tenn.App. 40, 270 S.W.(2d) 565; Burden v. Burden, 44 Tenn. App. 312, 313 S.W.(2d) 566. As a resident of Citrus County, Florida, appellee was entitled to have the application for change in custody of the children, if any change was to be made, in her home county. No reason is assigned why the Florida courts cannot or will not administer the law applicable to the situation as ably and as equitably as can the courts of Tennessee. As was said by Mr. Chief Justice Green, speaking for the Supreme Court of Tennessee in State ex rel. French v. French, quoting with approval from In re Penner, 161 Wash. 479, 297 P. 757:

"As said by another court, 'it is not proper to assume that the courts of this state are pre-eminently qualified to determine the order which will best promote the welfare of the child or children whose particular case is being considered. The courts of other states are guided by the same principle in determining questions involving custody of minors, and such courts are as well qualified to decide such questions as are the courts of this state.' " State ex rel. French v. French, 182 Tenn. 614, 188 S.W.(2d)606.

◼ The appellant, as petitioner, in the instant case, seeking a change of the custody of the children here involved different from that ordered by the Georgia court, did not come into court with clean hands and the trial

judge might properly, as between the parties themselves, have rejected his petition entirely. He had wrongfully deprived appellee of custody of the children, both in violation of the order of the Georgia court, and in violation of his own solemn agreement, since September of 1962, and was also in arrears for child support money ordered paid by the Georgia decree. Recognizing, however, as he doubtless did, that the interests of the children themselves were of greater importance than the technical rights of the parties litigant, and recognizing also that under authority of State ex rel. Sprague v. Bucher, 38 Tenn.App. 40, 270 S.W.(2d) 565, and Dearing v. Dearing, 50 Tenn.App. 394, 362 S.W.(2d) 45, his court had jurisdiction, the trial judge entertained appellant's petition, but limited the issue to be presented to the questions, "1. Have the parties made any agreement, either written or verbal, since the entry of the Georgia decree to change its provisions as to the custody of their children, and, 2. Does the conduct of the mother with reference to the three children show that she is unfit to be entrusted with their custody to the extent that it would shock the conscience of the court to enforce the provisions of the Georgia decree as to custody. Evidently his honor, the trial judge, was of opinion that, unless the affirmative of one or the other of these questions could be proved, appellee was entitled, under the provisions of the Georgia decree, to have the custody of the children restored to her. We can not say that he abused his discretion in thus limiting the issues to be tried. That he took into consideration the interests of the children, as distinguished from the rights of the parties litigant, is demonstrated by the circumstance that he postponed the effective date of the writ of habeas corpus which he granted till after the end of the school term. The Supreme

Court of Tennessee in Thones v. Thones, 185 Tenn. 124, 203 S.W.(2d) 597, held that the courts of Tennessee may enforce by contempt or other equitable processes judgments of foreign States for alimony, and we apprehend that the same rule should be held applicable to the decrees of foreign States awarding custody of children and/or child support for them. In that situation, we think appellant would have been in no position to complain if the trial judge had refused to hear him at all, and since the court did hear him within a limited scope, we think he has gained that much.

 Even if the cause had been heard on the broader scope insisted on by appellant, we have no reason to think that a different result would have been reached. We think the ruling of the trial judge in the instant case, and our ruling affirming same, closely analogous to that made by the Supreme Court in State ex rel. French v. French, 182 Tenn. 606, 611, 188 S.W.(2d) 603, where it was held that the trial judge too narrowly restricted the evidence, but that it was not reversible error. From the opinion of Mr. Chief Justice Green in that case, we quote as follows:

"After the relator had practically closed her evidence, a lengthy and spirited argument arose as to the scope of the proof which respondent would be allowed to introduce. The court, after a patient hearing, ruled as follows:

" 'Well, I have considered all these matters that have been brought before me and I am of the opinion that the inquiry at this time is limited to the proposition as to whether or not the status or condition of the petitioner (relator) in this case has changed since the ren-

dition of the Ohio decree and I will limit the evidence to that.'

"We think this rule was too narrow. We think evidence concerning any change of circumstances reflecting on the boy's welfare was competent— whether change in his father's status or condition, his mother's status or condition, or his own status or condition. Although not agreeing with the learned trial judge in so restricting the evidence, we cannot see that any harm was done.

"The respondent excepted to the foregoing ruling and tendered witnesses whom the court declined to hear after a statement by counsel of what their testimony would be. No proof therefore was introduced by respondent, judgment was entered in favor of the relator, and appeal taken by respondent to this Court. The child was turned over to the relator but a bond was exacted from her requiring the child's production if it was so ordered by this Court.

"A strong argument for reversal has been made in this Court but we are not disposed to interfere with the result reached below. These cases involving parental affections are always painful to consider. We can only do what seems to us best.

"Bearing in mind the rule quoted from Kenner v. Kenner, supra, we think that we should accredit the judgment of the Ohio courts who had jurisdiction of these parties, since it does not appear to us that there was any material change of circumstances between the time of the decree of divorce and the time of the hearing below. The divorce was decreed in December, 1943, and custody of the child awarded to the mother. The

trial below was had in June, 1944—an interval of six months. There was no time for much change." State ex rel. French v. French, 182 Tenn. 611-612, 188 S.W. (2d) 605.

Likewise, in the instant case, no material change in the situation of either of the parents is either alleged or claimed. The instances alleged, which it is claimed render appellee unfit to regain custody of her children, are more or less trivial in character. These are the instance of sending the daughter when nine years old, unescorted, by airplane from Florida to New Jersey, and that of entering the older boy in a junior military school.

Assignment of Error I is overruled.

By Assignment II appellant complains that "It was error for the trial court to order the 'children to be delivered to the mother at the place of her residence and into a court of competent jurisdiction for disposition of this case on its merits in Florida.' " It is claimed that this was error because the lower court is without authority to transfer the cause to a Florida court for disposition on the merits. There are two answers to this. In the first place, the court was not transferring the cause to a Florida court, but merely informing appellant that if he deemed himself entitled to any relief, the Florida court was the place to go for the purpose of obtaining such. In the second place, even if this be treated as a transfer of the matter to the Florida court, it was not Judge Jones of the Common Law and Chancery Court of Dyer County who made such transfer necessary, but the Supreme Court of Georgia which has held that where a party, to whom custody of children is awarded, moves out of the State of Georgia and the other party to the litigation

also moves out of the State of Georgia, jurisdiction of the matter passes to the courts of the domicile of the party to whom custody was awarded by the Georgia court. The lower court in the instant case merely held that, as between the appellant and the appellee, the decision of the Georgia court was res adjudicata. Assignment of Error II is overruled.

By assignment of error III, appellant complains that "It was error for the trial court to refuse to take jurisdiction and to hear this cause upon the merits on appellant's petition for a change in custody of said children." This has been covered by our discussion under Assignment of Error I. Assignment of Error III is overruled.

By Assignment of Error IV, appellant complains that "It was error for the trial court to fail to find that there had been a material change in the circumstances affecting the welfare and best interests of said children since the award of their custody under the Georgia decree, making a change in their custody essential." The evidence relied on by appellant in support of this assignment of error is that appellee, during the school session of 1961 and 1962 had placed Edward Christian Strube in the Junior Military Academy at Bloomington Springs, Tennessee and had planned to place the younger child, Theodore Pipkin Strube, there during the session of 1962-63; and also that appellee had sent Terry Anne Strube alone by plane from Crystal River, Florida to Newark, New Jersey, with only a telegram to appellant's mother so advising. With reference to the Junior Military Academy at Bloomington Springs, Tennessee, Mrs. Strube testified that she had investigated this school, both personally and through inquiries made by her sister

and thought that it was best for the child that he be placed there. She said that her expectations had been realized and that he had improved. She said that she had contemplated returning him to that school, and also sending the younger child along with him, but had decided to keep both of them in school at Crystal River, Florida. She was, of course, prevented from this by the wrongful retention of the children by appellant in September of 1962. We think the question of sending the child or children to the military school was one of parental authority which appellee was entitled to decide without interference from or supervision by the courts of Tennessee. Custody of the child in question had been granted to appellee, and the circumstance that he was or would be separated from both parents during the nine months school session is, in our opinion, a matter with which the Tennessee courts are not concerned. With reference to the sending of Terry Anne Strube alone by plane with a telegram to appellant's mother, appellee explained that appellant himself had withheld his telephone number or address, and the only means of communication between her and him was through his mother. With reference to her having sent the child to him two weeks before school was out, she testified that she did so only after having made arrangements with the school authorities, based on good grades of Terry Anne, to pass her from the fourth grade to the fifth grade, even though she was absent from school the last two weeks, and that this was done because Terry Anne wished to be with her father alone before the boys joined her with him. Assignment of Error IV is overruled.

Assignment of Error V complains that "It was error for the trial court to sustain appellee's petition for writ

of habeas corpus for the three children and dismiss appellant's petition for a change in custody of said children." The question here involved has been covered by our discussion under Assignment of Error I. Assignment of Error V is overruled.

Assignment of Error VI complains that "It was error for the trial court to exclude the rebutting testimony of Rev. W. J. Boyd upon the issue of a change of circumstances in the best interest of the children offered on behalf of appellant to the effect that he counseled with the children along with Dr. Robert Kerr and found them to be well adjusted and happy in their present surroundings, desired to make their home with their father, and at the same time expressed a love for their mother and a desire to visit with her."

We think the ruling made by the trial judge excluding this evidence was within the scope of his sound discretion. Certainly this testimony would have been competent as proof in chief, and when the trial judge saw fit to exclude it, when offered in rebuttal, only, we cannot say that he abused his discretion. Furthermore, while the wishes of the children themselves might and should have great weight on an original hearing awarding custody, we cannot say, at their tender ages, the oldest being only 10 years of age, that ignoring expression of such preference at a secondary hearing constituted reversible error. Especially is this true where, as in the instant case, these children had been for nearly a year in the exclusive custody of appellant. In any event, even if such testimony should have been admitted in evidence, we think its exclusion constituted harmless error under the provisions of section 27-117 T.C.A. Assignment of Error VI is overruled.

By Assignment of Error VII, appellant complains that "It was error for the trial court to exclude the rebutting testimony of appellant upon the issue of change in circumstances in the best interest of the children to the effect that the military school at Bloomington Springs, Tennessee, to which one child was sent was wholly inadequate and ill equipped, and in excluding photographs of the millitary school of the children in appellant's home." This testimony, even if it had been introduced, could not and should not have changed the result reached by the trial court. For the reasons assigned in our discussion of Assignments of Error I and VI, Assignment of Error VII is overruled.

It results that, with all of appellant's assignments of error overruled, the decree of the lower court dismissing appellant's petition for change of custody of children and sustaining the writ of habeas corpus on relation of appellee, is affirmed. Under the interlocutory order entered by this Court, appellee has at present custody of the three children here involved. With the decree of the lower court in her favor affirmed, she may, under provisions of the Georgia decree, keep them until the end of the school term of 1963-1964. The cash bond of $1,000 deposited by appellee in connection with the interlocutory order entered in this Court may be returned to her. The costs of this cause, including those of the lower court, as well as those of the appeal, will be adjudged against the appellant Edward John Strube and his surety on the appeal bond.

Avery, P.J.(W.S.), and Carney, J., concur.